UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| FRIENDS OF THE EARTH,<br>1101 15th Street NW, 11th Floor<br>Washington, DC 20005<br><br>      Plaintiff,<br><br>      v.<br><br>RURAL BUSINESS-COOPERATIVE SERVICE,<br>RURAL DEVELOPMENT, and UNITED<br>STATES DEPARTMENT OF AGRICULTURE,<br>1400 Independence Avenue SW<br>Washington, DC 20250<br><br>      Defendants. | Civil Action No. _____ |

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

### INTRODUCTION

1. Plaintiff Friends of the Earth brings this action under the Freedom of Information Act ("FOIA") to compel the immediate release of public records concerning the award of hundreds of millions of taxpayer dollars under the Rural Energy for America Program ("REAP") to anaerobic digesters that use waste from industrial animal operations ("manure digesters"). These records are in the possession of Defendants Rural Business-Cooperative Service ("RBCS"), Rural Development, and United States Department of Agriculture ("USDA") (collectively, "Defendants"). Defendants' unlawful withholding of the records violates FOIA and prevents Friends of the Earth, its supporters, and the public from understanding and evaluating Defendants' use of taxpayer funds to support manure digesters, which are costly, ineffective, and harmful investments.

2. Industrial animal operations confine hundreds, thousands, or even over a million animals to produce meat, dairy, and eggs. These animals generate a tremendous amount of

1

waste.  Operators typically choose to store and dispose of this waste using practices that cause significant greenhouse gas emissions ("GHG emissions"), as well as water and air pollution. Increasingly, operators are installing manure digesters to capture some GHG emissions from animal waste, a practice that creates opportunities to profit by selling the captured gas for energy use and selling credits for emissions reductions.  However, ample evidence shows that manure digesters are expensive to construct, do not offer cost-effective energy generation or GHG emissions reductions, degrade the environment, and harm small farms and rural communities.

3. RBCS awards operators funding to construct manure digesters through REAP, which is meant to provide grants and loan guarantees to farmers and rural small businesses for energy efficiency improvements, like efficient lighting or insulation, and renewable energy systems, such as solar panels or wind turbines.  From fiscal year 2021 to fiscal year 2025, RBCS awarded a total of about $257 million in grants and loan guarantees to new manure digester projects.  The average grant and loan guarantee amounts for these digester projects far exceeded the average awards for solar and wind projects.

4. To select from the many applicants for REAP funding, RBCS evaluates and scores proposed projects based on criteria set out in its regulations.  RBCS prepares a scoring guide for each project, which reflects the scores the project received under each criterion.  It then allocates funding to the highest-scoring projects.

5. To more fully understand RBCS's rationale for awarding REAP funding to manure digester projects and its oversight of entities that have received REAP funding, Friends of the Earth submitted a FOIA request to Rural Development—which manages FOIA requests for RBCS—seeking the scoring guides for certain digester projects that sought REAP funding and records related to monitoring of entities that receive REAP funding.

6. Rural Development identified 25 "Evaluation Criteria" spreadsheets, but it withheld all 25 spreadsheets in full under FOIA Exemption 5, which is meant to protect the agency's deliberative process. In support, Rural Development stated only that "[t]he information withheld under Exemption 5 consists of internal identifiers and formulated data" and that it "considered the Foreseeable Harm Standard when reviewing records and applying the FOIA exemptions."

7. Rural Development's decision to withhold the Evaluation Criteria spreadsheets violates FOIA because the spreadsheets do not fall within deliberative process exemption, Rural Development failed to identify any harm that will result from disclosure of the spreadsheets, and Rural Development did not support its decision with specificity or detail. The decision also inappropriately seeks to prevent public review of RBCS's justifications for its use of hundreds of millions of dollars of taxpayer funds.

## JURISDICTION AND VENUE

8. This Court has jurisdiction over this action pursuant to 5 U.S.C. § 552(a)(4)(B), which provides the United States District Court for the District of Columbia jurisdiction to enjoin an agency from withholding agency records and to order an agency to produce records improperly withheld. This Court also has jurisdiction pursuant to 28 U.S.C. § 1331, which provides jurisdiction over actions arising under a law of the United States.

9. Venue is proper in this district pursuant to 5 U.S.C. § 552(a)(4)(B).

## PARTIES

10. Plaintiff Friends of the Earth is a non-profit environmental organization headquartered in Washington, DC. For more than 50 years, Friends of the Earth has championed the causes of preserving a clean and sustainable environment, protecting the nation's public lands

3

and waterways, and exposing political malfeasance and corporate greed.  Friends of the Earth's Food and Agriculture program works to make our food system sustainable, healthy, and just.  As part of this work, Friends of the Earth advocates to reduce government incentives for industrial animal agriculture, including subsidies for manure digesters through REAP.  To advance this advocacy, Friends of the Earth uses public records requests to obtain information on subsidies for manure digesters and shares this information with its members and the public in reports, press releases, and blog posts.  *See, e.g.*, Carlin Molander & Molly Armus, *Making a Bad Situation Worse: Manure Digesters at Mega Dairies in Wisconsin* (2024), https://foe.org/wp-content/uploads/2024/06/WI-Case-Study_v2.pdf.

11. Defendant USDA is a department of the executive branch of the U.S. government.  USDA is an "agency" within the meaning of 5 U.S.C. § 552(f) and has possession and control over the requested records.

12. Defendant Rural Development is a mission area of USDA, *see* 7 C.F.R. § 2003.2 (2025), and the entity that manages FOIA requests for records from agencies within the mission area, including FOIA requests for records related to REAP, *see id.* § 2018.254 (2025).  Rural Development is an "agency" within the meaning of 5 U.S.C. § 552(f) and has possession and control over the requested records.

13. Defendant RBCS is an agency within the Rural Development mission area, 7 C.F.R. § 4280.3 (2025), and the administrator of REAP, *see id.* § 2.48(a)(30) (2025).  RBCS is an "agency" within the meaning of 5 U.S.C. § 552(f) and has possession and control over the requested records.

## LEGAL BACKGROUND

*Freedom of Information Act*

14.  FOIA requires federal agencies to disclose records to the public upon request, unless a record falls within one of the statute's exemptions to disclosure.  *See* 5 U.S.C. § 552(a)(3), (b).

15.  When an agency withholds a record pursuant to an exemption, the agency bears the burden of establishing its right to withhold the record from the public.  *Senate of Puerto Rico v. U.S. Dep't of Just.*, 823 F.2d 574, 585 (D.C. Cir. 1987).  To carry its burden, the agency must support its decision with specificity and in detail.  *Id.*

16.  In addition to establishing its right to withhold a record, the agency must also show that it "reasonably foresees that disclosure would harm an interest protected by [the] exemption." 5 U.S.C. § 552(a)(8)(A)(i)(I).

*Rural Energy for America Program*

17.  REAP aims to enhance energy independence, increase farmer and rancher income, promote rural economic development, and provide environmental and public health benefits.  *See* 148 Cong. Rec. S1108 (daily ed. Feb. 25, 2002).  To achieve these goals, REAP directs RBCS to provide grants and loan guarantees to agricultural producers and rural small businesses for energy efficiency improvements and renewable energy systems.  *See* 7 U.S.C. § 8107(a)(2).

18.  To determine which energy efficiency and renewable energy projects it will fund, RBCS scores the proposed projects based on criteria set out in its regulations.  *See* 7 C.F.R. § 4280.121 (2025).  The criteria include the amount of funding requested, the length of time for the project to recoup its costs, the amount of energy the project will generate per public dollar,

the project's environmental benefits, and whether the project satisfies certain "priority" conditions, such as whether the project is located in an area with high poverty, population decline, or employment loss.  *See id.*

19. On information and belief, RBCS prepares an evaluation criteria scoring guide for each project, which reflects the scores the project received under each criterion.

20. RBCS must rank the projects by their total score across all of the criteria and allocate funding to the highest-scoring projects.  *See id.* § 4280.122(c)–(d) (2025).

21. Rural Development sometimes identifies the projects that RBCS has selected for REAP funding in public announcements, and it provides some public information on those projects in its online Rural Data Gateway.  Neither the public funding announcements nor the Rural Data Gateway provide information on how the projects performed under the scoring criteria.

## FACTUAL BACKGROUND

*Manure Digesters Are Costly, Ineffective, and Harmful Investments*

22. Today, most animals produced for meat, dairy, or eggs are held in massive, industrial operations, where they generate a tremendous amount of urine and feces.  Many swine and dairy operations, as well as some poultry operations, store this waste in liquid form in massive pits, and they dispose of it by spreading it on fields.  These waste storage and disposal methods result in significant emissions of methane and nitrous oxide, two potent greenhouse gases.

23. Operators increasingly are turning to manure digesters to capture some of the methane emitted from waste pits.  Operators are incentivized to adopt digesters due in large part to federal and state programs that subsidize the cost of digester construction and create lucrative

6

markets in which operators can sell credits for the emissions reductions, as well as the lack of laws or regulations requiring operators to reduce or eliminate their methane emissions.

24. Installing a manure digester at an industrial animal operation requires putting a plastic cover over the waste pit or constructing a tank into which waste is pumped. Manure digesters also generally require pipes to transport the captured gas and equipment to combust it for use on-site as electricity or heat. Operators may instead opt to transport the gas off-site, where it can be upgraded to natural gas and inserted into existing natural gas infrastructure. The material left over after the digestion process, called digestate, still must be stored and disposed of.

25. Relevant to RBCS's consideration of a project's funding needs and ability to recoup costs, manure digesters are very expensive to construct, with total costs commonly ranging from $2 million to over $10 million, depending on the digester's size and design. Due to the high cost, operators generally must rely on federal or state funding to afford a digester.

26. The cost of constructing and operating a manure digester typically far exceeds the value of the energy it generates. According to one analysis by a University of California, Davis professor, a manure digester on a dairy with 2,500 cows costs approximately $1,130 per cow per year, while the market value of the gas the digester produces is about $128 per cow per year. That is, the cost of the digester is nearly 10 times the market value of the gas.

27. Relevant to RBCS's consideration of environmental benefits, the degree of GHG emissions reductions that manure digesters can provide is highly uncertain, because digesters and their associated infrastructure release methane due to leaks and malfunctions. In addition, leftover digestate releases methane and nitrous oxide during storage and disposal. Indeed,

studies show that digestate emits even more nitrous oxide than manure. And burning biogas for energy releases carbon dioxide.

28. Beyond GHG emissions from manure management, manure digesters leave other sources of emissions at industrial animal operations entirely unaddressed. In particular, cows and other ruminant animals release methane when they exhale as a result of a digestive process called enteric fermentation. These emissions are a major source of methane that manure digesters do not reduce.

29. Manure digesters also fail to remedy most water and air pollution from industrial animal operations, and in fact, they contribute to that pollution. As just one of many examples, in North Carolina, a digester waste pit cover burst, spilling anywhere from 10,745 to more than 37,000 gallons of waste into nearby Nahunta Swamp, according to reported estimates. The waste contained manure, dead animals, and food waste, including deli meat and hot dogs. A year later, levels of fecal coliform and nutrient pollution in Nahunta Swamp still far exceeded the applicable standards.

30. Leftover digestate also causes water and air pollution. According to the Natural Resources Conservation Service ("NRCS"), "land application of [digestate], compared with fresh manure, may have a higher risk for both ground and surface water quality problems" because "[c]ompounds such as nitrogen, phosphorus, and other elements become more soluble due to anaerobic digestion and therefore have higher potential to move with water." NRCS, USDA, *Conservation Practice Standard: Anaerobic Digester Code 366*, at 366-CPS-8 to -9 (2023), https://www.nrcs.usda.gov/sites/default/files/2023-08/366_NHCP_CPS_Anaerobic_Digester_2023.pdf. NRCS also explains that "[a]naerobic

8

digestion of livestock waste can increase amount of nitrogen that is converted to ammonia and subsequently emitted from the resulting wastewater." *Id.* at 366-CPS-8.

31. Relevant to RBCS's consideration of priority conditions, manure digesters are best suited to large, industrial animal operations, so public funding and other support for digesters primarily goes to large operations rather than small farms. Funding manure digesters at large operations but not small farms reinforces the large operations' economic advantages, making it even more difficult for small farms to survive and accelerating consolidation in the animal agriculture sector. The decline of small farms, in turn, worsens wealth and job loss in rural communities, which forces residents to move elsewhere.

32. Industrial animal operations can greatly reduce GHG emissions and pollution from animal waste without the use of manure digesters by adopting manure management practices other than liquid manure management, which generate less methane in the first place and are less likely to cause water and air pollution. In fact, transitioning away from liquid manure management can provide more methane emissions reductions at a lower cost to operators than installing a manure digester.

*RBCS Funds Manure Digesters Through REAP*

33. Between fiscal years 2021 and 2025, RBCS awarded grants to 45 new manure digester projects, for a total of $38,506,541, and it awarded loan guarantees to 11 new manure digester projects, for a total of $218,318,076.[1]

34. These manure digester projects received much larger awards on average than solar and wind projects. The digester projects' average grant was $855,701, and their average loan guarantee was $19,847,098. By contrast, the average grant for solar projects during the

---

[1] These figures exclude awards to existing manure digester projects for equipment upgrades or expansions and awards to digester projects that do not use animal manure.

same time period was $131,480, and the average loan guarantee was $6,445,087.[2] The average grant for wind projects was just $95,202.[3]

35.    REAP funding has gone to manure digesters at industrial animal operations with documented instances of pollution.  For example, in fiscal year 2024, RBCS awarded Isabella RNG LLC a $1,000,000 grant to construct a digester at Cow Pleasant Dairy in Isabella County, Michigan.  But earlier that year, the Michigan Department of Environment, Great Lakes, and Energy had cited Cow Pleasant Dairy for multiple unpermitted discharges of waste from the area around the confinement buildings into a nearby waterway.

36.    REAP is a very popular program, and RBCS regularly receives more applications than it can process and fund.  RBCS's decision to direct large awards to manure digesters thus means that many other projects go unfunded.

## FRIENDS OF THE EARTH'S FOIA REQUEST

37.    To more fully understand RBCS's rationale for awarding REAP funding to manure digester projects and its oversight of entities that have received REAP funding, on January 7, 2025, Friends of the Earth submitted a FOIA request to Rural Development seeking:

(a) For each eligible anaerobic digester project that sought funding through REAP between June 2022 and the present, any and all evaluation criteria scoring guides for each project;

(b) Any and all records containing policies or guidance related to scoring projects that seek funding through REAP, including any policies or guidance directly applicable to scoring anaerobic digesters; and

(c) Any and all records related to USDA's or Rural Development's monitoring or oversight of entities that receive funding through REAP.

Ex. A.

---

[2] These figures exclude awards for solar stock wells and solar-powered irrigation pumps.
[3] Wind projects did not receive loan guarantees between fiscal years 2021 and 2025.

10

38. On February 5, 2025, Rural Development issued a final response to Friends of the Earth's FOIA request, along with some responsive records. *See* Ex. B.

39. Rural Development identified 43 pages and 26 spreadsheets of responsive records. It released 43 pages and one spreadsheet in full, and it withheld the remaining 25 spreadsheets in full. *Id.*

40. While Rural Development released some information on some anaerobic digester projects that sought REAP funding during the relevant time period, it did not release the evaluation criteria scoring guides that Friends of the Earth had requested in order to understand RBCS's rationale for awarding REAP funding to digesters. Instead, Rural Development withheld the scoring guides pursuant to the deliberative process exemption.

41. The 43 pages that Rural Development released in full are all publicly available materials consisting of RBCS's regulations governing oversight, monitoring, and reporting requirements for loan guarantee recipients; instructions for submitting a Federal Financial Report to an agency; and a final rule updating RBCS's REAP regulations. *See* Ex. C.

42. The one spreadsheet that Rural Development released in full contains some information on 25 anaerobic digester projects that sought REAP funding from fiscal year 2022 to fiscal year 2025. *See* Ex. D. The spreadsheet shows the projects' total scores under RBCS's scoring criteria, but it does not show how the projects scored under each individual criterion. *See id.* As a result, it is impossible to know how RBCS scored the projects' ability to recoup their costs, generate energy, provide environmental benefits, or satisfy priority conditions.

43. According to Rural Development, the 25 withheld spreadsheets are "Evaluation Criteria." Ex. C.

44. Rural Development withheld the Evaluation Criteria spreadsheets pursuant to FOIA Exemption 5, which protects the agency's deliberative process. *See* Ex. B, at 2. To support the withholding, Rural Development stated only that "[t]he information withheld under Exemption 5 consists of internal identifiers and formulated data." *Id.* It also stated that it "considered the Foreseeable Harm Standard when reviewing records and applying the FOIA exemptions." *Id.*

45. The spreadsheet that Rural Development released in full does not contain all of the anaerobic digester projects that sought REAP funding during the relevant time period, based on projects identified in Rural Development's public REAP funding announcements. Accordingly, counsel for Friends of the Earth sought clarification on how Rural Development identified the projects that it deemed responsive to Friends of the Earth's request. *See* Ex. E.

46. Rural Development responded that it "was able to locate the requested data [on the missing digester projects] on [the] agency's public website" and shared a link to the Rural Data Gateway. *Id.*

47. While the Rural Data Gateway contains some information on the projects missing from the spreadsheet, it does not include the scores the projects received under each scoring criterion, which Friends of the Earth had requested.

48. Counsel for Friends of the Earth asked Rural Development whether its identification of additional digester projects in the Rural Data Gateway affected its response to the FOIA request. *See id.*

49. In response, Rural Development stated, "There are no further changes in the agency's response. Please see page 44 of the attached final response determination letter and responsive records recording the evaluation criteria." *Id.* Page 44 of the responsive records

refers to the "Evaluation Criteria" spreadsheets that Rural Development withheld in full pursuant to the deliberative process exemption. *See* Ex. C.

50. On May 5, 2025, Friends of the Earth submitted an administrative appeal to Rural Development by email and U.S. mail, challenging its reliance on the deliberative process exemption to withhold the Evaluation Criteria spreadsheets. *See* Ex. F. Friends of the Earth's appeal raised three independent flaws in Rural Development's decision to withhold the records. First, Rural Development did not—and cannot—show that the Evaluation Criteria spreadsheets fall within the deliberative process exemption. Second, it did not identify any harm that will result from disclosure of the records. And third, it did not support its decision with specificity or detail.

51. On May 7, 2025, Rural Development informed Friends of the Earth that it had received the appeal for processing. Ex. G.

52. On August 5, 2025, having received no further response from Rural Development despite Rural Development's obligation to make a determination on the appeal within twenty days of receiving it, 5 U.S.C. § 552(a)(6)(A)(ii), counsel for Friends of the Earth requested an update on the status of the appeal. *See* Ex. H. Rural Development has not responded to counsel's inquiry.

53. To date, Rural Development has not responded to Friends of the Earth's administrative appeal or produced the Evaluation Criteria spreadsheets, despite its statutory obligation to do so.

## CLAIM FOR RELIEF

### Violation of FOIA

54. The Evaluation Criteria spreadsheets are records in Defendants' possession.

13

55. FOIA requires Defendants to make non-exempt records available to the public upon request. *See* 5 U.S.C. § 552(a)(3).

56. Defendants bear the burden of demonstrating that withheld records are exempt from disclosure.

57. Defendants have failed to carry their burden of demonstrating that the Evaluation Criteria spreadsheets are predecisional and deliberative, and that disclosure of the Evaluation Criteria spreadsheets would harm an interest protected by the deliberative process exemption. Defendants therefore have failed to establish that the withheld records are exempt from disclosure pursuant to the deliberative process exemption.

58. Defendants' withholding of non-exempt records violates FOIA.

## PRAYER FOR RELIEF

Plaintiff respectfully requests that this Court:

1. Declare that Defendants' withholding of non-exempt records violates FOIA;

2. Order Defendants to produce all non-exempt, responsive records to Plaintiff within 20 days of this Court's order;

3. Award Plaintiff costs and reasonable attorney fees pursuant to 5 U.S.C. § 552(a)(4)(E) or 28 U.S.C. § 2412; and

4. Grant such other relief as the Court may deem just and proper.

Dated: January 14, 2026                              Respectfully submitted,


                                                   */s/ Kara Goad*
                                                   Kara Goad
Earthjustice
1001 G Street NW, Suite 1000
Washington, DC 20001
(202) 667-4500
kgoad@earthjustice.org

Alexis Andiman
Peter Lehner
Earthjustice
48 Wall Street, 15th Floor
New York, NY 10005
(212) 854-7376
aandiman@earthjustice.org
plehner@earthjustice.org

*Counsel for Plaintiff*